WESTERN UNION TELEGRAPH COMPANY V. CALL PUBLISHING COMPANY.

FILED MARCH 8, 1899. No. 8610.

1. Telegraph Companies: ASSOCIATED PRESS: REPORTS: CONTRACTS. The circumstances under which the contract by which the telegraph company agreed to transmit to the other party to the contract the news reports of the Associated Press examined, and *held* not to show the contract to be elemental of the consideration of the agreement by the Associated Press to furnish the news reports to the party to the first mentioned contract other than the telegraph company.

2. Public Service Corporations: INTERSTATE COMMERCE: DISCRIMINATION IN RATES. A public service corporation is amenable to the rules of the common law relative to discrimination in rates between patrons for like intrastate or interstate services rendered under like conditions, the latter in the absence of congressional legislation on the subject, and courts will enforce the rules of general jurisprudence in such matters.

3. ———: ———: ———. The evidence in regard to the difference in night and day rates for several certain classes of services *held* to furnish a basis for ascertainment of the measure of the dif-

ference in night and day rates in the services involved in litigation, in the absence of evidence to show reason for a greater distinction.

ERROR from the district court of Lancaster county. Tried below before CORNISH, J.   *Affirmed.*

*Estabrook & Davis* and *Ames & Pettis*, for plaintiff in error:

In order to constitute an unjust discrimination there must be a difference in rates under substantially similar conditions as to service.   (*Western Union Telegraph Co. v. Call Publishing Co.*, 44 Neb. 326.)

Where it is shown that a difference of rates exists, but that there is a substantial difference in conditions affecting the difficulties or expense of performing the service, no cause of action arises without evidence to show that the difference in rates is disproportionate to the difference in conditions.   (*Western Union Telegraph Co. v. Call Publishing Co.*, 44 Neb. 326.)

The petition is demurrable.   (*Swift v. Philadelphia & R. R. Co.*, 58 Fed. Rep. 858; *Gatton v. Chicago, R. I. & P. R. Co.*, 63 N. W. Rep. [Ia.] 589; *Murray v. Chicago & N. W. R. Co.*, 62 Fed. Rep. 24.)

*John M. Stewart, contra.*

References: *Cox v. Lehigh Valley R. Co.*, 4 Int. Com. Rep. 582; *In re Excessive Freight Rates*, 4 Int. Com. Rep. 68; *Railroad Commission of Florida v. Savannah, F. & W. R. Co.*, 5 Int. Com. Rep. 40; *Interstate Commerce Commission v. Baltimore & O. R. Co.*, 145 U. S. 263.

HARRISON, C. J.

In this action a recovery was sought of damages alleged to have accrued to the defendant in error by reason of unjust discrimination against it and in favor of another patron of the plaintiff in error in the rates charged for contemporaneous services.   There was a trial of the

17

issues joined in the district court and the plaintiff was awarded a judgment. In an error proceeding in this court the judgment was reversed and the cause remanded. A second trial in the district court resulted in a judgment for defendant in error, and the cause has been again removed to this court by the telegraph company. The opinion rendered at the former hearing is reported in 44 Neb. 326, and contains an extended statement of the facts, to which we now refer the reader. We deem it unnecessary to again set them forth herein; as developed during the second trial, they were in the main similar to what appeared during the first. Wherein they were dissimilar or different, or such new facts as were shown at the second hearing, we will, to the extent necessary, state them in the connection in which they may be material.

The defendant in error, hereinafter designated the Call Company, purchased of the *Daily State Democrat*, and there was assigned to the former an "Associated Press certificate," by which it became entitled to receive daily and print certain press or news dispatches which were to be transmitted to it from Chicago by the plaintiff in error, hereinafter styled the telegraph company.

When the Call Company purchased the certificate of the *Democrat* it immediately opened negotiations with the Associated Press relative to the dispatches and the contract for furnishing and reception of them. It appears that as the contracts were usually made the Associated Press agreed to furnish the dispatches for a certain stated sum, which was inclusive of the charges of the telegraph company for transmission; that the former collected the whole amount and settled with the latter. The Associated Press demanded, however, that the Call Company make its own contract with the telegraph company, which was done. It is now claimed that as this was demanded by the Associated Press a compliance with such demand was an essential of the contract between it and the Call Company and it became and was

a part of the consideration for such contract.   To this we
cannot agree.   It is plainly disclosed that the Associated
Press did not desire to become bound for the payment of
the charges of the telegraph company for dispatches sent
to the Call Company, and that this moved the demand
to which we have referred; that the transaction
amounted to no more than a sale of the dispatches to the
Call Company and it providing the means of transmis-
sion by its own contract, and that it should do so was
not elemental of the consideration between it and the
Associated Press.

It is argued that the petition did not state a cause of
action.   The reasons given for this contention are that
the pleading attacked declared upon a contract for inter-
state business; that the regulation of such business rests
exclusively with congress; that the statutes of Nebraska,
by which it was sought to establish rules on the subject,
were ineffective; that there was no regulative national
law applicable and no rules of the common law in force
or recognized as national rules or enforceable within the
nation as an entirety, or within the states composing it
or any one thereof, which, in the absence of statutory
enactment by congress, might be invoked and be gov-
ernable.   In the case of *Gatton v. Chicago, R. I. & P. R. Co.*,
63 N. W. Rep. [Ia.] 589, the subject of the existence in
the United States of the common law as national law
was discussed, and it was decided in the negative.   In
the opinion in *Swift v. Philadelphia & R. R. Co.*, 58 Fed.
Rep. 858, it was said: "Congress has not adopted the
common law of England as a national municipal law.
The courts of the United States have many occasions to
enforce the common law, but in every instance it has
been as the municipal law of the state by which the sub-
ject-matter was affected."   The decision was to the ef-
fect that the common law was not in force as a national
rule, and the exaction of unreasonable charges by a
common carrier was a matter to be regulated by na-
tional law, and in the absence of any such law the com-

mon law as in force in a state could not prevail. In the opinion in *Murray v. Chicago & N. W. R. Co.*, 62 Fed. Rep. 24, the matter was fully considered, and it was decided that the courts of the United States would recognize and enforce, in the absence of congressional legislation, the rules of general jurisprudence in any case and define the duties and obligations of the parties thereunder. In *Chicago, M. & S. P. R. Co. v. Solan*, 169 U. S. 133, the proposition that there was in full force a law of general jurisprudence and that it might be applied in a state court or in a federal court was given full recognition. (See, also, on this subject 6 Am. & Eng. Ency. Law [2d ed.] 285, 286.) We are satisfied from a review of the subject that in actions of the nature of the present, in the absence of national legislation, the principles of the common law or general jurisprudence of the state of the action are applicable and may be asserted and enforced, and in this state the common-law right of action is accorded full force and scope. (*Chicago, R. I. & P. R. Co. v. Witty*, 32 Neb. 275; *Atchison, T. & S. F. R. Co. v. Lawler*, 40 Neb. 356; *Missouri P. R. Co. v. Tietken*, 49 Neb. 130; *Chicago, B. & Q. R. Co. v. Gardiner*, 51 Neb. 70; *St. Joseph & G. I. R. Co. v. Palmer*, 38 Neb. 463; *Union P. R. Co. v. Vincent*, 58 Neb. 171.) It follows that this argument is without avail.

In the former decision it was determined: "Where it is shown that a difference in rates exists, but that there is also a substantial difference in conditions affecting the difficulty or expense of performing the service, no cause of action arises without evidence to show that the difference in rates is disproportionate to the difference in conditions. A jury cannot be permitted to find such disproportion without evidence." One of the questions presented at this time is, if it be conceded that a difference in conditions under which the services were rendered was shown, was there evidence produced during the second trial which would uphold a conclusion by the jury that the difference in the rates charged was disproportionate

to the difference in conditions?  With reference to the change in facilities for transmission of messages which was in part at least made necessary to handle the increased business properly it must be said that after the change in the facilities was made patrons to whom the same matters were furnished must have them at uniform rates, but there was herein still the one difference in the conditions that one patron must be furnished the services at a specific or fixed time in each instance, while to the other the time was immaterial, or to the one it must be in the daytime and to the other not, and in this case it was shown practically to have been services for one in the day and to the other at night.  During the second trial there was shown that the difference between day and night rates for what are known as commercial and ordinary messages was that the night rate was two-thirds of the day rate; that it had been one-half, but this produced so much night business of this nature that the night rate was increased.  It was also shown that on special news dispatches to certain newspapers, one directly involved herein and the other incidentally, the difference between day and night rates to each was one-half.  It was further of evidence that on services rendered the press association in transmission of news from various parts of the United States to Chicago, when being gathered for its patrons, the difference between the day and night rate was one-half.  Of one of these at least there was no evidence during the first trial, and of another there was no discussion in the briefs; hence no notice in the opinion. To the extent disclosed by the record the reasons for the relative charges for day and night dispatches were the same, or were not materially dissimilar in the several classes of services.  There was then here tangible information from which the jury was warranted or might, within proper rules, draw the inference that as to the class of services directly involved in this controversy a like difference should prevail, or at least there were no grounds for a greater distinction than was shown in the

classes as to which there was evidence on the subject. Within this view the verdict of the jury was not wrong and must be allowed to stand. The judgment must be

AFFIRMED.