ABRAHAM L. HOOVER ET AL., APPELLEES, V. JAMES M. DEFFENBAUGH ET AL., APPELLANTS.

FILED FEBRUARY 20, 1909. No. 15,510.

1. Waters: WATER RENTALS. The plaintiffs, proprietors of a hotel in the city of Lincoln, in the year 1898 installed their own water system to supply their hotel, which had thertofore been connected with the water mains of the city by a service pipe three-fourths of an inch in diameter, on which the water commissioner had placed a meter to register the amount of water used. The

Hoover v. Deffenbaugh.

city water was thereupon turned off at the curb, but was turned on from time to time, with the knowledge and consent of the water commissioner, to enable the plaintiffs to repair their pump, and in 1901 was not again turned off, but was left in that condition until some time in September, 1904, when in making some alterations to the hotel the meter was disconnected without plaintiffs' knowledge, and so remained until August 18, 1905. On the discovery of that fact, the city demanded from the plaintiffs the payment of what it called a "flat rate," based on the number of taps or faucets in the building from September, 1898, to August 18, 1905, amounting to the sum of $6,203.75, and threatened, in default of immediate payment of that amount, to turn off the city water from their hotel. *Held*, That such demand was unreasonable and unjust, and that the city was not entitled to enforce the same.

2.———: ———: INJUNCTION. Plaintiffs brought suit to restrain the city from turning off the water, and offered to pay for the amount of water actually used and consumed during the time the meter was so detached. *Held*, That although the amount of water actually used during that time was not susceptible of exact measurement, yet it could be approximately obtained by a comparison of the amount of water used after the meter was replaced, and the evidence of disinterested witnesses as to its previous use, and that the amount so found by the district court was reasonable and just, and upon payment thereof to the defendants the plaintiffs were entitled to an order restraining them from cutting off the city water from their hotel.

APPEAL from the district court for Lancaster county: EDWARD P. HOLMES, JUDGE. *Affirmed.*

*John M. Stewart* and *T. F. A. Williams,* for appellants.

*Hall, Woods & Pound* and *Charles O. Whedon, contra.*

BARNES, J.

This is a suit in equity brought in the district court for Lancaster county by Abraham L. Hoover and Stephen C. Hoover against the city of Lincoln and its water commissioner, J. F. Deffenbaugh, to enjoin them from turning off the supply of city water from the Lindell Hotel, and for an accounting of the amount due from the plaintiffs to the city of Lincoln for water used from Septem-

ber, 1904, to the 18th day of August, 1905, which amount the plaintiffs offered to pay. The plaintiffs had judgment, and the defendants have appealed.

The petition sets out, in substance, that the plaintiffs are the owners and proprietors of the Lindell Hotel; that prior to December 10, 1907, they obtained their water supply from the city water main on the M street side of the hotel; that about that date they put in a water system of their own, obtaining their water from a well on their own premises by pumping and piping it through the hotel; that to provide for a supply of water in emergencies, in case of accident or injury to the plaintiffs' plant, they had their water system connected with the city main by a pipe three-fourths of an inch in diameter, and the defendants duly installed a meter thereon, as required by the city ordinance of the city of Lincoln; that, by means thereof, the water which passed from the city main into their hotel, and every part thereof, was duly registered and measured; that in September, 1904, the location of the pipe connecting the two systems, by reason of certain improvements then being made in the hotel, had to be changed, and in so doing, without the knowledge or consent of the plaintiffs, the meter was disconnected by some person or persons unknown to the plaintiffs, and that they had no knowledge of that fact until the 18th day of August, 1905; that all the city water registered down to the time of the removal of the meter, and which was all the city water used by the plaintiffs during said period, amounted at ordinance rates to a sum not exceeding $40; and that after such removal, and down to August 18, 1905, in case of emergencies or of accident to the pumping machinery in plaintiffs' water system, their employees occasionally and without plaintiffs' knowledge used small quantities of city water, the exact amount unknown, but no more was used than in the years 1897 to 1904, when the said meter was in place; that on August 18, 1905, the city water was shut off, a meter was installed September 1, 1905, and the water was turned on

again to be used pending a settlement; that plaintiffs have been and now are ready and willing to pay the city the full amount due it according to its rates in force therein for all water taken from said city mains and used in and about their hotel building down to the said 18th day of August, 1905; that the city insists that the plaintiffs pay a flat rate, regardless of the amount of water used, based on the number of taps or faucets in the building from September, 1898, to August 18, 1905, amounting to the sum of $6,203.75. The petition further alleged that the defendant Deffenbaugh threatens "and is about to turn off the city water from plaintiffs' hotel, and prevent them from using the same, or getting any benefit or advantage from or by reason of the system of waterworks operated by the city for the benefit of all the citizens and inhabitants thereof"; that by reason thereof, in case of accident or injury to the plaintiffs' water system, their hotel would be left wholly without water, and it would be impossible to operate the same in such case without the use of city water; that, if plaintiffs are deprived of such use in case of emergency, they will be put to great hazard and loss, and their business will be destroyed; that they will be compelled to close up their hotel and cease operating the same, and thereby suffer great and irreparable loss and injury; that the said defendant Deffenbaugh on or about the 1st day of March, 1906, served a notice upon the plaintiffs, demanding that they pay to him for the said city, the exorbitant and unreasonable sum of $6,203.75, and that unless such sum was paid on or before 4 o'clock on the 2d day of March, 1906, he would turn off the city water and cut their hotel off from all access thereto; that the plaintiffs are solvent, ready, and willing to pay any sum reasonably due for city water actually taken and used in said hotel. The petition concluded with a suitable prayer for relief.

The defendant city and its water commissioner answered plaintiffs' petition, first, by certain admissions and special denials, and for affirmative defense to the

plaintiffs' action, by way of cross-petition, alleged, in substance, that on and prior to the 1st day of September, 1898, the plaintiffs' hotel was connected with the defendant city's water mains by means of a supply pipe extending from such water mains in the street into plaintiffs' building; that the connection of said supply pipe was constructed so as to be served by means of turning a stopcock at the water main in the street; that on the last named date the defendants, at the request of the plaintiffs, turned off said stopcock in the street, and disconnected and shut off the water from the plaintiffs' hotel, and the same was not between said date and the first day of September, 1905, turned on or connected by defendants with their knowledge and consent; that the plaintiffs without the knowledge and consent of defendants or any of them, and with intent to defraud the city of Lincoln, wrongfully and fraudulently in violation of the ordinance of the city caused the said stopcock to be turned so as to allow the water from defendants' mains to run into the supply and surface pipe connecting with plaintiffs' hotel, and thereby caused their hotel to be supplied with water from defendants' mains, and by means of said connection caused their said hotel to be supplied with all of the water used by plaintiffs in and about their hotel from defendants' mains from September 1, 1898, to August 18, 1905, without the knowledge or consent of the defendants or any of them; that after the 1st day of September, 1898, and after defendants had disconnected and turned off the water from the plaintiffs' hotel, the defendants, having no reason to believe that plaintiffs were using water from the city main, made no inspection or reading of the meter through which such water would properly pass in entering said hotel; that such meter by means of plaintiffs' wrongful and fraudulent manipulation, and by reason of its becoming out of repair, failed to register and preserve for reading the amount of water passing through the supply pipe connecting the water mains with plaintiffs' hotel, and failed to register and preserve for reading the amount

of water so actually used by plaintiffs; that afterwards, and on or about the — day of September, 1904, the plaintiffs removed the said meter wrongfully and fraudulently, without the knowledge of the defendants or any of them, connected their supply pipe direct with the water mains, and fraudulently and surreptitiously drew all of the water used in their hotel until on or about the 18th day of August, 1905, when defendants incidentally discovered the wrongful and fraudulent connection, and disconnected the same and turned off said water; that prior to the last named date defendants had no knowledge and no reason to believe, and could not by the exercise of reasonable diligence have discovered, plaintiffs' said wrongful and fraudulent acts in making the connection with the water mains and their subsequent use of the water therefrom; that after the discovery of such wrongful and fraudulent connection on the 18th day of August, 1905, the plaintiffs duly installed a meter under the ordinance of the defendant city.

The defendants also set out the city ordinances in force from and after the year 1895, defining the powers and duties of the water commissioner, and prescribing water rates, together with the rules governing its use. The answer further alleged that there was due from the plaintiffs from September 1, 1898, to August 18, 1905, the sum of $7,035.57; that under the ordinance there was due in addition to said amount a penalty of 10 per cent. interest, and 7 per cent. per annum from the time when the same became due, amounting in the aggregate to $10,000, which it demanded from the plaintiffs, and prayed that it be permitted to turn off the water from plaintiffs' hotel and sever the connection of said hotel with the city water mains unless plaintiffs paid that amount. Defendants also prayed that an account might be taken of the amount due the defendants under its ordinances on account of the plaintiffs' connection with the city water mains, and *"for the water used,"* for judgment therefor; that the

34

judgment be made a lien upon the plaintiffs' real estate, and that the injunction prayed for by the plaintiffs' petition be denied, and for general equitable relief.

The plaintiffs for reply to defendants' cross-bill alleged that on August 23, 1899, they paid to the city the sum of $3.15, being the full amount then due according to the meter which the city had installed to measure the amount of city water used by them in their hotel. They also averred their willingness to pay for whatever amount of water was used by them at regular meter rates of 15 cents a thousand gallons as provided by the city ordinance of 1895, and denied each and every allegation in the answer or cross-petition that was not by their reply expressly admitted.

Upon a trial of the issues above stated the district court found, in substance, that the plaintiffs from the 1st day of September, 1898, to the 1st day of September, 1905, maintained their own water supply for their hotel, with the exception of a short time on different occasions when it was necessary to remove their pump for repairs, and on a few other occasions when a small amount of water was used for priming their pump or other purposes; that the meter on the water connection was, on or about the 1st day of September, 1904, in lowering a floor of one of the rooms of plaintiffs' hotel, temporarily removed from its place; that the same had not been replaced when its removal was discovered on the 18th day of August, 1905; that the plaintiffs had no knowledge of the removal of the meter, and that, if the same was out of repair prior to its removal, plaintiffs had no knowledge thereof, and were without fault or negelect on that account; that it was the duty of the city authorities to inspect their meter and keep it in repair; that plaintiffs never concealed or attempted to conceal the use of the city water, and at all times believed that such water as they used was being registered by the meter placed upon their water connection; that they were ready and willing at all times to pay for any water used at the rate of 15 cents a thousand gal-

lons for all water consumed by them; that the value of
the city water used by them during the said period
amounted to $180; that on or about the time this suit was
begun defendants threatened to turn off the city water
from the hotel unless plaintiffs would pay the sum of
$6,203.75; that said demand and threatened action was
unjust, arbitrary and illegal; and thereupon rendered a
decree requiring plaintiffs to pay to the defendants the
sum of $180; that each of the parties should pay their
own costs, and that upon the payment of the sum so
found due to the city the injunction was ordered to be
made perpetual. From that judgment, the defendants, as
above stated, have appealed.

A careful reading of. the bill of exceptions satisfies us
that the plaintiffs maintained the allegations of their
petition by clear and convincing evidence. It also ap-
pears that in 1901, at the plaintiffs' request, the city
water which had been turned off from their hotel in 1898
was turned on again, after notice to the defendants, in
order to enable the plaintiffs to repair their pump; that
it remained in that condition until August 18, 1905; that
up to some time in the month of September, 1904, the
meter theretofore mentioned and installed by the water
commissioner was in place between the water main and
plaintiffs' water system, so that all of the city water used
by them flowed through the said meter; that without in-
tentional fault on the part of the plaintiffs the meter was
disconnected some time during the month of September,
1904, and remained in that condition until the 18th day
of August, 1905; that from and after the last named date
the meter was again installed, and that plaintiffs did not
and could not obtain any water from the city other than
that registered by said meter at any other time than the
period above stated; that, when the mistake and the ab-
sence of the meter was discovered, plaintiffs offered to
pay for any and all city water used by them, and offered
to adjust the matter and settle with the city therefor on
any fair, reasonable and equitable basis, but said over-

tures and offers were rejected. We therefore have no hesitancy in saying that the facts found by the district court are fully sustained by the evidence, and, for that reason, we adopt such findings as our own.

On the other hand, the defendants failed to establish their affirmative defense, and it would seem from their present contention that they are fully aware of that fact, for they now submit two principal questions for our determination: First. What constitutes the consideration for which the plaintiffs should pay? Second. At what rate should they be required to make payment to the city?

Referring to the question first above stated, it is contended by the defendants that the city is entitled to charge, collect and receive, without regard to the amount of water used by plaintiffs, a special or additional compensation for what they style "readiness to serve." In support of this contention defendants have cited the case of *Cox v. Abbeville Furniture Factory*, 75 S. Car. 48, 54 S. E. 830. That was a case where the water company furnished a furniture company with water for use in its special private system of fire protection without an agreement fixing the liability therefor. It appears that the furniture factory was situated some distance away, and across a certain railroad track, from the regular mains of the water company, and by an agreement the company laid a private main from its regular system, extending across the railroad track to the factory, where it connected the main with the special system of fire protection, called "automatic sprinklers." In an action to recover the value of the service, it was held that the water company was not obliged to furnish water without charge to be used in a special private system of fire protection instituted by a private corporation for the security of its own property; that, where a water company furnished water for such use without an agreement fixing the liability therefor, it was entitled to reasonable compensation for such protection whether water was used or not; that the term "minimum charge," as used in water supply

contracts where the meter system obtains, usually signi-
fies rate of compensation for expense and labor of being
ready to supply water at will of the consumer, though the
supply had not been used at all.  In the case at bar there
is no contention that the plaintiffs are afforded any spe-
cial fire protection other and different from that enjoyed
by all other property owners of the defendant city.  They
maintain no automatic sprinkler system, and the only
water service they ever had up to the 1st day of Septem-
ber, 1905, was such as was afforded by an ordinary pipe
three-quarters of an inch in diameter connecting their
hotel with the city mains.  This is no other or different
service from that given to stores, residences, hotels and
ordinary private consumers.  The defendants having
furnished no specific protection to the plaintiffs other
and different from that to which the citizens of the city
of Lincoln were entitled in common, their only liability
for what is called by defendants "readiness to serve" is the
payment of 50 cents a month, which is the minimum
charge fixed therefor by the ordinance of 1895.

Under the last assignment, the defendants contend that
the amount of water actually furnished to and used by
the plaintiffs is wholly immaterial; that, having wrong-
fully removed the meter furnished by the city, they are
guilty of fraud, and the city is therefore entitled to
charge, collect and receive what they call a "flat rate"
from September, 1898, to September, 1905, regardless of
whether any water was used or not.  In support of this
contention defendants cite the case of *Krumenaker v.
Dougherty,* 77 N. Y. Supp. 467.  That was a case where
the plaintiff's premises were found to be supplied with a
properly metered service pipe, and also with an unmetered
service pipe, through which water had been illegally
drawn; the pipes being so arranged that by closing a stop-
cock water could be obtained through the unmetered pipe
without any disturbance of the meter.  On a disconnec-
tion of the unmetered pipe for several days the amount of
the water registered was much greater than before.  The

owner denied any illegal use of water, but offered to compromise a bill tendered him for water illegally used. The bill tendered was for an unjust and exorbitant amount, accompanied with a threat to turn off the water from the plaintiff's premises. He thereupon commenced a suit in equity, alleged the facts, offered by his bill to pay for the amount of water actually consumed, and prayed for an injunction restraining the defendant from turning off the water. It was held that the plaintiff was guilty of an illegal appropriation of water; that it was proper to determine the amount for which the plaintiff was legally liable for such illegal use by a comparison of the quantity which the meter had registered with amounts registered during a week when the unmetered pipe was disconnected, taken together with the volume of the user's business; and that, upon a failure to pay the amount so found due for water illegally taken through the unmetered pipe, the city was entitled to cut off the plaintiff's water supply. It will thus be seen that it has been decided in a suit like the one at bar that the amount of water used is what the plaintiffs should be charged with, and that amount, although not susceptible of an exact measurement, can be approximately obtained by comparison.

Finally, our attention is directed to the case of *Gordon & Ferguson v. Doran,* 100 Minn. 343. That was a case where a property owner had installed what is called the "automatic sprinkler system," and had connected it at his own expense with the water mains, and was not entitled to take water in any case, except of fire. It was held that he obtained a beneficial use of water not common to the public in general, and the water board was entitled to make a reasonable and impartial charge for the valuable and special privilege thus conferred; that the board would not be permitted to enforce illegal rates by severing the connection from such sprinkling devices, and that courts will interefere by injunction or otherwise to protect the public and individuals entitled to water service against unreasonable charges or discriminations made by public

utility corporations or bodies. If the decision in that case has any bearing at all upon the questions involved in this controversy, it seems to favor the plaintiffs' contention that they are entitled to the injunctive process of the court to restrain the city from enforcing what they allege to be an unjust, unreasonable and exorbitant demand by cutting off the city water from their hotel.

It is also claimed by the defendants that the meter installed by the city on the service pipe entering the plaintiffs' hotel, when they established their own water system in 1898, failed to register the amount of water passing through it; that it was dead, or, in other words, out of commission, and the plaintiffs had thus been enabled to surreptitiously obtain water from the city mains. The evidence fails to establish this contention. It appears that up to the year 1900 the water commissioner looked after the meter in question; and from time to time obtained its readings, and from such readings presented a bill to the plaintiffs in August, 1899, which was duly paid. It would seem, however, that this bill was for such a small amount that thereafter the city failed to read the meter. It was shown, however, that at one time a person charged with that duty went to the hotel, where he was informed that he could find the meter by following the water pipe; that he refused to look for it, and went away without making any attempt to find it. Now, if the meter was dead, that fact could have been easily ascertained by the city by the ordinary and usual test, and, if defendants really believed that the meter was out of commission, we are unable to see why they did not make such a test, so as to be able to prove that matter to a reasonable certainty.

It was evidently the opinion of the trial court that both parties to this action were to some extent, in the wrong, and therefore in an action in equity it was improper to enforce any of the unjust and inequitable demands presented by the defendants. It appears that the district court compared the amount of water used for three months after both meters were installed with the testi-

mony of disinterested witnesses who knew the facts relating to its previous use, and by adding thereto the minimum charge for readiness to serve obtained the amount which the decree required plaintiffs to pay as a condition for the relief prayed for by their petition. So far as we are able to ascertain, this might reasonably have been a less amount. The witnesses for the defendants, engineers and assistant engineers, who were employed at the plaintiffs' hotel during all of the time in question, who are not now so employed, and who appeared in many instances to be hostile to the plaintiffs, testified that there was a stopcock on the surface pipe, between the meter and the city main, by which they could turn on or shut off the city water, and which they used for that purpose when it was necessary to take such water to prime the plaintiffs' pump, and while it was undergoing repairs; that they had strict orders not to use city water, except such as was necessary for those purposes, and that they obeyed their orders implicitly.

We therefore adopt the finding of the district court as to the amount and value of the city water used by plaintiffs, and for which they should be required to pay as a condition for the relief prayed for by them, as our own.

A careful examination of the record satisfies us that the judgment of the district court is fully sustained by the evidence, is a just and equitable one, and it is therefore in all things

AFFIRMED.