RUTH ERICKSON ET AL., EXECUTORS OF THE ESTATE OF A. HORACE ERICKSON, DECEASED, APPELLEES, V. METROPOLITAN UTILITIES DISTRICT, A CORPORATION, ET AL., APPELLANTS, HAROLD M. DIERS ET AL., INTERVENERS-APPELLEES.

107 N. W. 2d 324

Filed February 3, 1961. No. 34862.

George C. Pardee, G. H. Seig, and Harry H. Foulks, Jr., for appellants.

J. A. C. Kennedy, Yale C. Holland, George L. DeLacy, Ralph E. Svoboda, and Clarence E. Heaney, Jr., for appellees.

*Eugene D. O'Sullivan*, for intervener-appellee O'Sullivan.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This action was originally instituted in the district court for Douglas County, Nebraska, by A. Horace Erickson, plaintiff, against the Metropolitan Utilities District, a public utility corporation created pursuant to statutes of the State of Nebraska, which will be referred to as the district, the individual members of the board of directors of the district, and the general manager thereof, defendants. It is not deemed necessary to name herein the members of the board of directors or the general manager. The plaintiff died during the pendency of the action and in consequence Ruth Erickson and the Omaha National Bank, as executors, were substituted as parties plaintiff. Before the case was tried three separate groups of parties, one corporation, and one individual filed pleadings and became interveners in the case. Their relation to the subject matter of the action was in substance the same as that of the plaintiff.

The action, briefly stated, was by plaintiff to enjoin the district and its officers and directors from imposing and collecting a water surcharge; from imposing penalties and taking punitive action for refusal to pay a water surcharge; and from exacting a rate for seasonal use of water not applicable to all seasonal users on the basis of the amount of water used. The relief sought by the interveners was in substance the same as that sought by the plaintiff.

The action was tried to the court and a judgment was rendered in favor of plaintiffs and interveners and against the defendants. Motion for new trial was filed. From the final judgment and the order overruling the motion for new trial the defendants have appealed.

For the further purposes of this opinion the plaintiffs and the interveners will be referred to as appellees, unless other reference is required, and the defendants will be referred to as appellants, except when separate reference is made to the Metropolitan Utilities District. At such times it will, as has already been indicated, be referred to as the district.

By the pleadings of the appellees it is substantially alleged that the district is a public utility corporation organized and carrying on its business under and by virtue of the laws of the State of Nebraska, and as such it operates the water system which serves the inhabitants of the city of Omaha and surrounding territory within the limits of the district; that the district adopted a rate schedule or surcharge for all nonconserved air-conditioning equipment; that the schedule was denominated " 'Rate Schedule W-S. Surcharge Rates for Non-conserved air-conditioning' "; that the surcharge rate exaction was $36 per ton of capacity of nonconserved water-cooled air-conditioning units; and that this surcharge is for reasons enumerated arbitrary, unreasonable, unjust, oppressive, and discriminatory. Of the enumerated reasons those necessary to a determination of this case will be adverted to later herein. The date this surcharge was adopted is not declared in the pleadings but the record discloses it was January 4, 1956, effective as of January 1, 1956. It exempted all units installed up to and including April 30, 1956, for the years 1956 and 1957.

By answers containing detailed contentions in that area the appellants deny the charge that the surcharge is arbitrary, unreasonable, unjust, oppressive, and discriminatory.

The ultimate determination in this action properly depends upon which of these two opposing contentions must be sustained under the facts and applicable legal principles. Subordinate and preliminary to an ultimate determination the proper approach, in the light of

the peculiar capacity and powers of the district, must be ascertained.

The general powers of the district are found in section 14-1002, R. R. S. 1943. To the extent necessary to state them here, they are the following: "A metropolitan water district shall be a body corporate and possess all the usual powers of a corporation for public purposes, * * *. It may exercise any and all the powers that are now or may be granted to cities and villages by the general statutes of this state for the construction or extension of waterworks."

Specific regulatory powers which are of concern in this case are found in section 14-1015, R. R. S. 1943, as follows: "The board of directors of the metropolitan water district shall have power and authority to determine and fix all water rates, and to determine what shall be a reasonable water rate for any particular service, the conditions and methods of water service, the collection of all charges for water service or the sale of water; * * *. The board of directors shall also have authority to make such rules and regulations for the conduct of the water plant controlled and operated by the metropolitan water district, and the use and measurement of water supplied therefrom as it may deem proper, including the authority to cut off any water service for nonpayment, or for nonmaintenance of the pipes and plumbing connected with the supply main, or noncompliance on the part of any water user with the rules and regulations adopted by the board for the conduct of its business and affairs."

While it is a matter of no real importance in the determination of the issues involved here the present name of the district flows from section 14-1101, R. R. S. 1943, and not from the original legislation empowering the creation of metropolitan water districts.

The capacity in which the district as such performs its functions does not appear to have been clearly defined in the statutes, the decisions of this court, or in the briefs

of the parties to this action, although the inference to be drawn from all of these is that there is an accord that it does not perform a governmental function but one in the nature of a private enterprise for the convenience, advantage, and benefit of the area of functioning, the inhabitants thereof, and the property owners therein. This conclusion flows from the pronouncement contained in Metropolitan Utilities Dist. v. City of Omaha, 112 Neb. 93, 198 N. W. 858. This is the logic which flows from the language in the opinion in that case which declares that when a city is performing like functions the exercise thereof is not governmental but in the nature of a private enterprise. This is supported by the language of United Community Services v. The Omaha Nat. Bank, 162 Neb. 786, 77 N. W. 2d 576, wherein the functions of other public corporations are described and analyzed.

In the performance of the functions under the power granted by the statute the district in the matter of service rendered and rates to be charged therefor, the question of whether or not the district has acted unreasonably and arbitrarily has been recognized as a matter proper for judicial examination and review. The case of Keystone Investment Co. v. Metropolitan Utilities Dist., 113 Neb. 132, 202 N. W. 416, 37 A. L. R. 1507, is one wherein there was such a review. No case has been cited or found to the opposite effect.

The parties however, while apparently agreeing that there may be a review, do not agree as to the character and extent of that right. The position taken by the district is lacking in clarity. The interpretation placed upon that position appears to be about as follows: If on the hearing in the district court there was competent and relevant evidence to sustain the action of the district and on which evidence it could not be said the action was arbitrary and unreasonable, and if such action was within the scope of the powers of the district, the court could not of right declare it invalid.

It relies for this position on Nebraska Limestone Producers Assn. v. All Nebraska Railroads, 168 Neb. 786, 97 N. W. 2d 331, and cases cited from other jurisdictions. Neither this case nor any of the others is authority for this position. The cited case is one which came to this court for review of action taken after full hearing and determination of the Nebraska State Railway Commission which is a constitutional department of state government clothed with power, among others, to hold hearings and establish rates for common carriers in intrastate commerce. Art. IV, § 20, Constitution of Nebraska. The powers of hearing and decision conferred upon the Nebraska State Railway Commission are not conferred on the district either by Constitution or statute. That case therefore does not amount to authority for the contention made. Furthermore this position is inimical to the status of the district as indicated by what was said in Metropolitan Utilities Dist. v. City of Omaha, *supra,* and Keystone Investment Co. v. Metropolitan Utilities Dist., *supra.*

In practice, if not by specific declaration, it has been the rule that public service corporations having power to adopt rules and regulations are required to exact reasonable requirements, the reasonableness of which may be inquired into in a full hearing in the courts. See, Western Union Telegraph Co. v. Call Publishing Co., 44 Neb. 326, 62 N. W. 506, 48 Am. S. R. 729, 27 L. R. A. 622, 58 Neb. 192, 78 N. W. 519, affirmed 181 U. S. 92, 21 S. Ct. 561, 45 L. Ed. 765; American Water-Works Co. v. State ex rel. Walker, 46 Neb. 194, 64 N. W. 711, 50 Am. S. R. 610, 30 L. R. A. 447; Albert v. Davis, 49 Neb. 579, 68 N. W. 945; Hoover v. Deffenbaugh, 83 Neb. 476, 119 N. W. 1130. This represents substantially the theory on which the appellees have proceeded.

The conclusion reached is that the question of the validity of the exactions made by the district which are here for review was the proper subject of a full hearing de novo by the district court. It is added that the ap-

pellees do not contend that the burden was not on them to establish invalidity in order to prevail.

The surcharge, the penalty and punitive action, and the seasonal rate which the appellees sought to enjoin by their action and which were enjoined by the judgment of the district court appear in Rate Schedule W-S adopted by the board of directors of the district on January 4, 1956, and declared effective as of January 1, 1956, with a reservation that it would not apply through 1956 and 1957 to nonconserved air-conditioning equipment which had been actually connected to the district's water system on or before April 30, 1956. All equipment installed after April 1956 was subjected to the rate.

The schedule to the extent necessary to state it here provides that, in addition to the regular charges at the applicable rates, a surcharge shall be made of $36 a ton of capacity for water-cooled air-conditioning where the unit does not have water-conserving equipment. The surcharge is allocated one-third each to the months of June, July, and August of each year. No surcharge shall be made if nonconserved air-conditioning equipment is installed but has been physically disconnected from the plumbing system. If there is a reconnection at any time before September 1 of any year the annual charge for the year will be made. If new installations are made prior to June 30 of any year the full surcharge shall be applicable; if made between July 1 and August 1 the surcharge shall be two-thirds of the total; and if made between August 1 and September 1 the surcharge shall be one-third of the total.

It is this that the appellees contend is arbitrary, unreasonable, unjust, oppressive, and discriminatory. They contend this on substantially the following grounds: (1) The surcharge is not based upon units of service rendered but upon the kind and character of equipment used; (2) it relates to but one type and not to all seasonal uses; (3) it amounts to a tax on equipment in

favor of the district and permits rates not based on the amount of necessary return; (4) it is prejudicial and discriminatory as to persons who installed nonconserving units prior to the adoption of the rate; (5) it imposes an illegal arbitrary charge without regard to quantity of water used; (6) it ignores the fact that the district has sufficient capacity to meet all peak demands; and (7) it discriminates against users of nonconserved equipment by excluding from the application of the surcharge industries and commercial firms whose water consumption remains steady regardless of season. This is a consolidated abstract of the stated grounds in the petition of the original plaintiff in this case.

Preliminary to a consideration of whether or not any or all of the contentions have been sustained it is here pointed out that there had been before and has been since the establishment of this surcharge a uniform graduated rate for furnishing water which depended upon the amount regularly metered and furnished to the user. All users, including each and all of the appellees, were required to pay the same rate. Also prior to and since this surcharge was established there was no other classification upon which was imposed a surcharge upon any amount or particular use of water. It is true that there were special situations under which the district furnished water for which service it received payment, but these had no relation to the questions involved herein.

To justify the surcharge, or more accurately stated, to defend against the contentions of the appellees, the district urges substantially that the use of water in nonconserving air-conditioners sets the users apart as a class of such a kind and character as to permit the exaction of a reasonable surcharge for the water used for that purpose, and that the surcharge made and the rate established were reasonable.

A large part of the record and of the briefs in this case deals with motives and motivations. It should be

said however that motives may not be allowed to control or influence unless they coincide with sound principle.

In this area it becomes clear, and about this there is no real dispute, that the district was, in the establishment of the surcharge, in a large measure motivated by a purpose to prevent the installation of additional nonconserving water air-conditioning and to encourage the installing of water-conserving equipment on existing nonconserving equipment, the contemplated design of which was to reduce prospective future necessity for enlargement of water production capacity of the facilities of the district in order to meet the demands for water during peak periods of water use. It follows therefore that the conclusion to be reached must rest upon what the record discloses or fails to disclose as to reasonable necessity rather than only motive.

The surcharge here is based, as has been indicated, on a classification of the appellees into a class separate and distinct from all other users of water of the district with the rate charged higher than the rate charged to any of the others. There is no legal bar to classification provided that a valuable service was given other and different from that furnished to the public at large, and that the charge is reasonable and is not discriminatory. See, Keystone Investment Co. v. Metropolitan Utilities Dist., *supra;* Nebraska Limestone Producers Assn. v. All Nebraska Railroads, *supra.*

The evidence on the question of whether or not this surcharge was for a valuable service other and different from that furnished to the public at large, and the further question of whether or not the surcharge is reasonable and not discriminatory is of such length that it may not be summarized herein, but from it pertinent observations, which are deemed controlling, will be made as accurately as the record will permit.

At this point it will be said that the alleged ground of invalidity in (2) herein, which embraces b, e, and i

in the plaintiff's petition, requires no consideration other than to say that the evidence is insufficient upon which to base a finding of invalidity with particular regard to the matter of whether or not what was done was reasonable. This is not to say that what is presented by this specification, if supported by competent and material evidence, could not be the basis of the kind and character of relief sought herein. In this case there is evidence as to the demands and requirements of nonconserving air-conditioners but none which furnishes a basis for a comparison of this with other customer uses, hence clearly there is no basis for anything more than speculation as to whether or not there is unreasonableness and discrimination in this respect.

Our (4), plaintiff's d, in the terms in which it is stated stands without support. If there is discrimination it is in favor of the person who installed a nonconserving unit before the adoption of the rate regulation since he is relieved from the surcharge through 1957.

As to our (1), plaintiff's a, the meaning is not clear. The surcharge is based on evidence of probable maximum daily excess use of water by a nonconserving air-conditioner over one of like capacity having conserving equipment. Whether or not this has a material bearing on the validity of the surcharge must depend upon matters which will necessarily be considered under other specifications.

As to our (7), plaintiff's j, this requires no special consideration herein. This is true for the reason that although the factual statement contained therein is quite probably true the record is insufficient upon which to base a finding that this represents true discrimination rather than proper classification.

If therefore this surcharge is found to be arbitrary, unreasonable, unjust, oppressive, or discriminatory the findings must depend upon what the record discloses as to our (3), (5), and (6), plaintiff's c, f, g, and h.

At the outset of the consideration of this phase of the

case it is pointed out that in point of fact at no time after the establishment of this surcharge was it necessary to increase the pumping capacity of the district to meet the need for nonconserved air-conditioning or for any other purpose. In 1955 there was one day on which there was a use of 120,000,000 gallons. That was the highest amount ever required before or since. The ·capacity was increased, which increase was completed in 1957, to 140,000,000 gallons. This was before the surcharge became effective as to those having nonconserved air-conditioning before 1956. No further increase was projected after that which was completed in 1957. It is true that engineering surveys were made, the reports of which indicate a prospective later need for expansion but these were in nowise implemented. There is nothing authentically in the record to indicate that it was the purpose of the district to apply any portion of the surcharge in payment of the capital investment involved in the increase of capacity to 140,000,000 gallons which was completed in 1957. This according to the evidence of the district amounted to somewhat more than $14,000,000.

It is made clear by the evidence that so long as the plant and facilities for distribution were sufficient no extra burden or cost over that involved in the ordinary furnishing of water to users was cast upon the district by the furnishing of water for nonconserving air-conditioners.

It was also made clear that the Missouri River was the source of the water supply of the district and that the only limit on the supply, present or future, insofar as the district is concerned was or would be the limit of the capacity and facilities of the district.

It was further made clear that the same rate for water use was charged for all water used by persons having nonconserved air-conditioning, whether used in the air-conditioners or not, as was charged to all others who did not have nonconserved air-conditioning.

It was in view of these facts and known conditions that the surcharge was imposed. As pointed out, the surcharge was $36 per ton of capacity of each conditioner.

The theory on which it is based has been reduced to a mathematical formula, although clearly it is at least in large measure hypothetical and speculative. It is true of course that in a situation such as this hypotheses and speculative considerations are not avoidable. The formula produces an appropriate surcharge of $37.25 but this was reduced to an even $36.

The surcharge was based upon 7½ percent per annum of $675, that being the part of the reproduction cost of an entire new plant attributable to the maximum use of water in a 1 ton nonconserving air-conditioning unit less the difference between the estimated revenue from water used and the commodity cost thereof or $13.35, giving a result of $37.25.

The estimated reproduction cost of the plant was $66,000,000. The calculated actual cost prior to the addition which was completed in 1957 was slightly less than $23,000,000. As pointed out the capital cost of the addition completed in 1957 was approximately $14,-000,000. Whether or not this was included in the $66,-000,000 cost of reproduction has not been made clear. Be that as it may the total actual cost with the completion of the added capacity in 1957 was approximately $37,000,000.

At this point the question is propounded: What was the true basis of fixation of the amount of this surcharge? One answer which has been pointed out by the district is that it was to discourage the use of nonconserved water air-conditioning and to bring about its discontinuance. This, as the record discloses, was in large measure accomplished. But as indicated this motive furnished no basis for the imposition of the surcharge, there being a lack of adequate information upon which to base a declaration that this use repre-

sented a classification to which the district could apply a separate and distinct charge.

The design could not properly have been to make a rate charge for a use for which a rate had not been previously charged. The record discloses that the standard meter rate was made for all water used. The record fairly discloses that in delivery of this water no loss was entailed. In fact it is pointed out without controversy that so long as sufficient plant and capacity exist, the use of water in nonconserving air-conditioning equipment insofar as relative cost of operation is concerned adds no burden.

In the light of what has been said with reference to past, present, and future, if the design was to impose this as a current operating charge it was patently discriminatory.

In the light of well-established principles the surcharge was not only discriminatory but was unreasonable and accordingly unenforceable.

It is true, as has been pointed out by section 14-1015, R. R. S. 1943, that the board of directors of the district has the power and authority to determine what shall be a reasonable water rate for any particular service. This power and authority is not however without restrictions.

The general rules are set out in 12 McQuillin, Municipal Corporations (3d Ed.), § 34.97, p. 299, as follows:

"The rule forbidding unjust discrimination has been variously expressed: The charges must be equal to all for the same service under like circumstances. A public service corporation is impressed with the obligation of furnishing its service to each patron at the same price it makes to every other patron for the same or substantially the same or similar service. It 'must be equal in its dealings with all.' It 'must treat the members of the general public alike.' All patrons of the same class are entitled to the same service on equal terms. 'The law will not and cannot tolerate discrim-

ination in the charges of these quasi-public corporations. There must be equality of rights to all and special privileges to none.' 'A person having a public duty to discharge is undoubtedly bound to exercise such office for the equal benefit of all.' 'All should be treated alike; equality of rights requires equality of service.' 'The duty owed to all alike involves obligations to treat all alike.' 'The common law upon the subject is founded on public policy which requires one engaged in a public calling to charge a reasonable and uniform price to all persons for the same service rendered under the same circumstances.'

"The numerous cases on this subject all tend to establish the same general principle, that those engaged in serving the public cannot make unreasonable and unjust discrimination, either in service or rates, among their patrons. Discriminations between patrons by a public service company, including discriminations as to rates, are invalid, provided the discrimination is an unjust one, * * *."

Section 35.37, p. 686, from the same text, contains the following which has the effect of making the general rules applicable to the situation under examination in this case:

"Where a municipality owns its water or light works, it is settled that it has the right to charge rents against consumers who make use of its service, just as does a privately operated public utility. However, the rates must be reasonable, although the municipality may charge a rate which will yield a fair profit, and need not furnish the supply or service at cost; and the same rules in regard to the reasonableness of rates apply as in case of the rates of private companies owning a public utility. * * * Otherwise stated, where the municipality owns its plant, the rates for water, light or any other product, furnished by it must be fair, reasonable and just, uniform and nondiscriminatory. The same rules enforced against public service corporations in these respects, as herein already stated, are applied with full

force to the municipality. Judicial review may usually be had as to the reasonableness of the rates."

The principles thus declared are supported by the decisions of this court and of courts of other jurisdictions. See, Western Union Telegraph Co. v. Call Publishing Co., *supra;* American Water-Works Co. v. State ex rel. Walker, *supra;* Hoover v. Deffenbaugh, *supra;* Annotation, 50 A. L. R. 126.

It cannot well be gainsaid that if the record disclosed that the furnishing of water for use in nonconserving air-conditioning equipment was a service materially other and different from general use, which was more costly to render for any reason, and a charge was made on that account which was not unreasonable or discriminatory, it would be sustained. In determining validity this and all other elements bearing upon costs would be proper subjects of consideration in arriving at a rate charge.

In the instance here however, as has been several times indicated, there is no evidence that surrounding conditions which have or will in the foreseeable future come to pass will ratably increase the cost of this service over that which prevails in the area served by the district.

As against this the district urges that it is entitled to charge for the water used and in addition thereto make and collect this surcharge which in effect would be in the nature of a partial amortization of the costs of reproduction of the district's existing plant and facilities.

This theory may not on the record be sustained for two reasons. The first is that there is an absence of evidence that the other users of water were in any manner likewise burdened. The second is that there is nothing to indicate that it would be so allocated, but on the contrary it is reasonably inferable that it would become simply part and parcel of regular operating revenue. This would clearly be a discrimination against the users of water passing through nonconserving air-

conditioners. The application of this theory would be clearly discriminatory whether applied to a valuation of $66,000,000, $37,000,00, or $22,000,000.

The only other basis advanced to support the surcharge is that it was reasonable and proper as a provision to be exercised in anticipation of a future need and necessity for expansion of the plant and production capacity of the district to meet the requirements of nonconserving air-conditioning equipment and the normal requirements of service attendant upon the growth and expansion of the area to be served by the district.

It shall not be the purpose here to say that the district does not have the legal right in the anticipation of future expansion to make some provision therefor out of the revenues obtained from current operations. On the other hand it is not the purpose to say that it does have such right. That question is not being passed upon herein. Assuming however that it does have such right it must be said that reasonably one group of users may not be singled out and the provision made to attach to it to the exclusion of others, or if it is attached to all it may not be attached unequally.

In the light of what has been said it is clear that if the district purposed to and was in its overall operations so anticipatorily functioning, the users of nonconserving air-conditioning were being subjected to it on an equal basis with all others and in addition and alone these users of nonconserving air-conditioning were subjected to the surcharge. As has been pointed out, as to relative cost of current operation and absence of evidence of a valid basis for separate classification, no justification for the surcharge can be found. It was clearly discriminatory.

The record, on the theories considered herein, substantiates the contention of the appellees that the imposition of the surcharge is oppressive, discriminatory, and unreasonable, and accordingly its validity may not be sustained.

For the reasons herein set out the judgment of the district court is affirmed.

AFFIRMED.

ELLWOOD B. CHAPPELL and PAUL E. BOSLAUGH, JJ., not participating.