METROPOLITAN UTILITIES DISTRICT, APPELLEE, V. CITY OF OMAHA, APPELLANT.

FILED APRIL 30, 1924.   No. 23252.

1. **Municipal Corporations:** TAXATION. A legislative act which creates a liability that can be discharged only from funds raised from taxation imposes a "tax," within the meaning of that part of section 7, art. VIII of the Constitution, which provides "The legislature shall not impose taxes upon municipal corporations, or the inhabitants or property thereof, for corporate purposes."

2. ————: GOVERNMENTAL FUNCTIONS. The construction, operation or maintenance of water and gas plants by municipal corporations is not an exercise of governmental functions, but is rather in the nature of a private enterprise for the convenience, advantage or benefit of the municipality, its inhabitants and property owners.

3. ————: "CORPORATE PURPOSES." The phrase, "for corporate purposes," as used in section 7, art. VIII of the Constitution, is limited to those municipal activities designed, in the main, for the principal or exclusive convenience or benefit of the municipality, its inhabitants or property owners.

4. ————: CONSTITUTIONAL LAW. That part of section 3760, Comp. St. 1922, which imposes upon municipal corporations the burden of paying the cost of lowering gas and water mains and resetting hydrants, is in contravention of section 7, art. VIII of the Constitution.

APPEAL from the district court for Douglas county: ARTHUR C. WAKELEY, JUDGE. *Reversed, with directions.*

*W. C. Lambert,* for appellant.

*John L. Webster, contra.*

Heard before MORRISSEY, C. J., LETTON, ROSE, DEAN, DAY and GOOD, JJ., and REDICK, District Judge.

Good, J.

In this action Metropolitan Utilities District, plaintiff, seeks to recover from the city of Omaha, defendant, the cost of lowering gas and water mains and water hydrants in the city of Omaha. Defendant demurred to the petition on the ground that the statute, requiring the city to pay such cost, was in violation of section 7, art. VIII of the state Constitution. The demurrer was overruled and, defendant refusing to plead over, judgment was rendered for plaintiff. Defendant appeals.

In 1913 (Laws 1913, ch. 143) the legislature created the "Metropolitan Water District of the City of Omaha," and gave to it the "sole management and control of all waterworks property, * * * and all the powers that are now or may be granted to cities and villages by the general statutes of this state for the construction or extension of waterworks." Rev. St. 1913, sec. 4244. Section 15 of the act provided that said Metropolitan Water District "shall also lower water mains and reset hydrants at their original locations whenever necessary: Provided, that the cost thereof shall be paid by the respective municipalities whenever such pipe lowering and resetting of hydrants is made necessary because of a change in established street-grades or curb lines." Rev. St. 1913, sec. 4257. At that time the Metropolitan Water District of Omaha included within its boundaries other cities and villages. The following clause, "cost thereof shall be paid by the respective municipalities," in the statute above quoted, evidently had reference to the cities and villages in the district.

In 1919 (Laws 1919, ch. 33) said section 15 was amended to read as follows: "Said district shall also lower water mains and reset hydrants at their original locations whenever necessary: Provided, that the cost thereof shall be paid by the respective municipalities. Said district shall also afford free of charge water required for public use by each of said municipalities." Comp. St. 1922, sec. 3760. The legislature in 1919, by a new act (Laws 1919, ch. 187), provided: "Whenever any metropolitan city included within a

metropolitan water district shall acquire or take possession of a gas plant or electric plant supplying gas or electricity, as the case may be, said gas plant or electric plant shall be immediately taken over by said metropolitan water district, and operated by the board of directors of said metropolitan water district." Comp. St. 1922, sec. 3771. In 1921 (Laws 1921, ch. 111) the legislature changed the name of Metropolitan Water District to Metropolitan Utilities District, and further provided that said Metropolitan Utilities District should in all things and in all respects become the successor of the Metropolitan Water District and be possessed of and exercise all the powers and authority conferred upon the Metropolitan Water District as fully and effectually as though the corporate name had not been changed, and by said act it further provided that the powers of said district should extend to and apply to gas plants and other public utilities as fully and effectually as if said gas plant had been specifically named in the statute laws of the state creating or relating to metropolitan water districts. In 1912 the city of Omaha took over a waterworks system, and in 1920 it acquired, by condemnation proceedings, a gas plant, and since said dates the city has owned a waterworks system and a gas plant, which are controlled, managed and operated by the plaintiff. Plaintiff determines the rates to consumers for water and gas and collects all revenues from the sale of water, gas and its by-products.

From the allegations of the petition which are admitted, it appears that it became necessary that certain gas mains and water mains be lowered and hydrants reset, and, pursuant to the statutory provisions, the plaintiff performed this work, and now seeks to recover the cost thereof from the city. It is the defendant's contention that the statute requiring the city to pay such cost violates that part of section 7, art VIII of the Constitution, which is as follows: "The legislature shall not impose taxes upon municipal corporations, or the inhabitants or property thereof, for corporate purposes." If the defendant is required to pay the claim of plaintiff, it must do so from funds derived from

taxation. The creation of a liability that can only be discharged by funds raised from taxation constitutes the imposition of a tax, within the meaning of the constitutional provision above quoted. *Helena Consolidated Water Co. v. Steele*, 20 Mont. 1; *Campbell County v. City of Newport*, 174 Ky. 712.

It is conceded by both plaintiff and defendant that the construction, operation or maintenance of water and gas plants by a municipal corporation is not a governmental function, but is in the nature of a private enterprise. The municipality is not required to construct, own or operate such public utilities. It may contract with private corporations or individuals to furnish such service, or it may, if it so elects, own and operate such utilities for the benefit and convenience of its inhabitants and property owners. Whatever a municipality does in the matter of engaging in the furnishing and delivery of water and gas to its inhabitants is in its proprietary or quasi-private capacity. Whatever it does under the police power is in its governmental capacity. *South Carolina v. United States*, 199 U. S. 437; *Los Angeles Gas & Electric Co. v. City of Los Angeles*, 241 Fed. 912, affirmed by the United States supreme court in *City of Los Angeles v. Los Angeles Gas & Electric Co.*, 251 U. S. 32.

Plaintiff contends that the phrase, "for corporate purposes," as used in section 7, art. VIII, Const. (formerly section 7, art. IX, Const.), relates to municipal government, and that the inhibition is the imposition of taxes for the purpose of carrying out its governmental power, functions and duties, as distinguished from the obligations and duties arising from the exercise of its power to operate private or business enterprises, such as waterworks systems, gas plants, and the like; that it necessarily follows that there rests upon the city the obligation to pay for the maintenance of the plant, the cost of lowering gas and water mains and changing location of hydrants, when made necessary, and that such expenditure is not the imposition of a tax, within the meaning of the constitutional provision. It

calls attention to the fact that the provision under consideration is identical with a provision of the Illinois Constitution, from which it was taken, and contends that the construction placed upon this provision by the court of last resort of that state should be followed by the courts of Nebraska. In support of its contention, the plaintiff cites the following cases from the Illinois supreme court: *City of Chicago v. Manhattan Cement Co.,* 178 Ill. 372; *People v. County of Williamson,* 286 Ill. 44; *City of Chicago v. Knobel,* 232 Ill. 112; *Chicago, M. & St. P. R. Co. v. Lake County,* 287 Ill. 337.

In *City of Chicago v. Manhattan Cement Co., supra,* the action was to recover for the destruction of property by a mob and was brought under the mob law, which declares municipalities liable for destruction by mobs of property within its boundaries. It was held that such legislation did not contravene the constitutional provision. The ruling was put upon the ground that the legislation was an exercise of the police power of the state. In the course of the opinion, the following quotation from Cooley on Taxation was cited with approval (p. 384) : "Another similar case is, where a municipal corporation is compelled, by means of taxation, to make compensation for losses sustained within its limits at the hands of mobs and rioters. It has been thought from very early times that that political division of the county which failed to exert its authority for the effectual suppression of disorder, by means whereof innocent parties suffer from lawlessness and violence within its boundaries, might justly be required to make good the losses, and that its diligence in maintaining the empire of the laws would be quickened by the requirement. Such legislation is, in effect, only a part of the state police system, under which the municipal divisions are severally looked to for the preservation of the public peace within their respective limits. And, speaking generally, it may be affirmed that in any case in which compulsory taxation is found necessary in order to compel a municipal corporation or political division of the state to perform properly and justly any of its

duties as an agency in the state government, * * * the state has ample power to direct and levy such compulsory taxation. * * * The legislature has undoubted power to compel the municipal bodies to perform their functions as local governments, under their charters, and to recognize, meet and discharge the duties and obligations properly resting upon them as such, * * * and for this purpose it may require them to exercise the power of taxation whenever and wherever it may be deemed necessary or expedient." In the course of the opinion it was further said (p. 385) : "Keeping in mind that the passage of this and similar laws is for the better government of the state—is a mere police regulation—sections 9 and 10 of the Constitution in no way limit the power of the general assembly to enact them."

In *People v. County of Williamson, supra,* the action involved the validity of an act of the general assembly, making counties liable for their *pro rata* share of the cost of constructing a bridge over a stream constituting the boundary line between two counties. It was held that such act did not contravene the constitutional provision, and that the general assembly may compel a municipal corporation to perform any duty which relates to the general welfare and security of the state, although the performance of the duty will result in taxation or create a debt to be paid by taxation. It was said (p. 49) : "Roads and bridges are not merely for local use but for the use and accommodation of all citizens of the state, and it is within the power of the general assembly to provide that counties shall build roads and bridges and that a county shall pay its proportionate share of the cost of a bridge across a stream on the boundary line between it and another county."

The case of *City of Chicago v. Knobel, supra,* involved the constitutionality of a legislative act which made a county bear part of the expense for juries for municipal courts of the city. In the course of the opinion it was said (p. 117) : "The state is interested in the enforcement of laws in all parts of its territory. The necessity for such enforcement

in incorporated towns, and especially in large cities, for the good of the state, is certainly as vital as in the unincorporated territory.  * * *  The results arising from the enforcement of the laws within our large cities are so closely interwoven with the well-being of the city, county and state governments that it would be somewhat difficult on a question of this kind, based upon the proportionate amount which should fairly be paid by each, to hold a division of expenses between the city, county and state unconstitutional." Evidently the decision was grounded upon the proposition that the tax imposition was for a governmental purpose, as distinguished from a local, corporate or private purpose.

The case of *Chicago, M. & St. P. R. Co. v. Lake County, supra,* involved the validity of a legislative act requiring municipalities to pay the cost of an alteration of dangerous railroad crossings by the construction of subways. In that case it was held that under the constitutional provision the legislature could not create a debt against a municipal corporation for merely local purposes, requiring taxation, without the consent of the taxpayers affected; that requiring the construction of subways was an exercise of the police power of the state, and that the debt created against the municipality was for the protection of the general public and not for local corporate purposes. It was also held: "While sections 9 and 10 of article IX of the Constitution prohibit the state from creating a debt against a municipal corporation for local corporate purposes necessitating the levy and collection of a tax, they do not prohibit the state from imposing a liability where the public safety and welfare require it and the municipality fails and neglects to act."

It seems clear that none of the cases cited is authority for the position taken by the plaintiff. They seem to tend very strongly to support a contrary view, and to interpret the constitutional provision as being a limitation upon the legislative authority to impose taxes for local corporate or private purposes, and not to inhibit the imposition of a tax

for enforcing a governmental purpose or one for the general good and benefit of the public at large, as distinguished from the benefit of the local corporation or its inhabitants.

This court has, on several occasions, had under consideration the constitutional provision above quoted. In *State v. Wheeler,* 33 Neb. 563, it was held that an act of the legislature, requiring lre insurance companies to pay a certain proportion of their gross premium receipts for the support of city fire departments, was a violation of the constitutional provision; and in *Aachen & Munich Fire Ins. Co. v. City of Omaha,* 72 Neb. 518, the court had under consideration the validity of an act of the legislature imposing upon fire insurance companies a tax of 2 per cent. of their gross premiums, but not limited to the support of fire departments, and it was held in conflict with the Constitution, and was based upon the holding in *State v. Wheeler, supra.* In neither of these cases, however, was any consideration given to the meaning of the phrase, "for corporate purposes."

In *State v. Love,* 89 Neb. 149, a legislative act, providing for the pensioning of superannuated firemen in cities of the metropolitan class, was held not obnoxious to the constitutional provision now under consideration. Judge Root, in writing the opinion, after reviewing the prior decisions of this court on the subject, reached the conclusion that a city, in maintaining a fire department, exercises governmental, rather than private or corporate, power, and further said (p. 153) : "While the city of Lincoln has the right, and in its charter is given specific authority, to assemble appliances for the extinguishment of fires, to employ firemen, and to levy and collect taxes to pay the expense of the fire department, and while that purpose is a public one, it is not a corporate purpose within the prohibition in section 7, art. IX (now art. VIII) of the Constitution."

McQuillin in his work on Municipal Corporations, at section 2379, commenting upon the scope and effect of similar constitutional provisions, used this language: "This provision that the legislature shall have no power to impose taxes on municipal corporations or their inhabitants for 'munic-

ipal purposes' refers to the ordinary purposes for which taxes are levied by municipalities, namely, for constructing sewers, improving streets, erecting and operating water and light plants, and various different matters or enterprises which are for the sole benefit or enjoyment of the municipality and its inhabitants."

When a legislative act is attacked on constitutional grounds, courts will hesitate to declare it invalid unless it clearly contravenes some specific constitutional command; but this court also recognizes the Constitution as the supreme law, binding alike on it and the legislative branch of the government, and when a legislative act clearly violates a specific constitutional declaration the court has no recourse, but to declare the act invalid.

In this case, we are of the opinion that the phrase, "for corporate purposes," as used in the constitutional provision above quoted, does not include purposes and activities designed, in the main, to aid or assist the state in carrying out its governmenta' activities, functions and policies, but is limited to those municipal activities designed, in the main, for the principal or exclusive benefit of the municipality, or of its citizens and inhabitants. The legislative act, seeking to impose upon metropolitan cities the burden of paying the cost of lowering gas and water mains and resetting of hydrants, violates section 7, art. VIII of the Constitution, and is therefore invalid.

The judgment of the district court is reversed and the cause remanded, with instructions to enter a judgment dismissing the plaintiff's cause of action.

REVERSED.

Note—See Gas, 28 C. J. p. 547, sec. 2; Municipal Corporations, 28 Cyc. pp. 269, 1660.