KEYSTONE INVESTMENT COMPANY ET AL., APPELLANTS, V. METROPOLITAN UTILITIES DISTRICT, APPELLEE.

OMAHA NATIONAL BANK, APPELLANT, V. METROPOLITAN UTILITIES DISTRICT, APPELLEE.

CITY NATIONAL BANK BUILDING COMPANY, APPELLANT, V. METROPOLITAN UTILITIES DISTRICT, APPELLEE.

SOVEREIGN CAMP, WOODMEN OF THE WORLD, APPELLANT, V. METROPOLITAN UTILITIES DISTRICT, APPELLEE.

FILED FEBRUARY 17, 1925. NOS. 24273, 24274, 24275, 24276.

1. **Waters: WATER-WORKS: CHARGES.** In being ready to furnish a supply of water from its mains through a service-pipe for a stand-pipe in a private building, the Metropolitan Utilities District renders a valuable service to the owners of such building, and enables such owners to enjoy an added measure of fire pro-

Keystone Investment Co. v. Metropolitan Utilities District.

tection not enjoyed by the public generally, for which service the district is entitled to make a reasonable charge.

2. ———: ———: ———. The rule of Metropolitan Utilities District, fixing an annual charge of $60 for a 4-inch pipe connection with its service water-mains for the supply of a standpipe for private fire protection, in the light of the evidence set out in the opinion, is *held* reasonable and not discriminatory.

APPEAL from the district court for Douglas county: CHARLES A. GOSS, JUDGE. *Affirmed.*

*Stout, Rose, Wells & Martin,* for appellants.

*John L. Webster, contra.*

Heard before MORRISSEY, C. J., DAY, GOOD and EVANS, JJ., REDICK and SHEPHERD, District Judges.

GOOD, J.

In each of the above entitled actions the plaintiffs sought to enjoin defendant from the enforcement of its rules and regulations, requiring plaintiffs to pay an annual charge for a stand-pipe service for fire protection in the office buildings owned or operated by them. The four actions, by stipulation of the parties, were consolidated for trial in the district court, but a separate decree, denying the injunction, was entered in each case. Plaintiffs in the several actions have appealed, and all of the cases have been submitted together in this court, and, as substantially the same questions are involved, the disposition of the appeal in each case will be governed by this opinion.

It appears without controversy that each of the plaintiffs either owns or operates one of the following buildings in the city of Omaha, viz.: Peters Trust Company building, Omaha National Bank building, City National Bank building, and Woodmen of the World building. In each of said buildings there is installed and maintained a water-pipe, reaching from basement to roof, known as a stand-pipe, and maintained for fire protection of said building and its contents. The stand-pipe in each case is, by means of a 4-inch private main, connected with defendant's ser-

vice water-mains in the street adjacent to the building. There are hose connections with the stand-pipe on two or more floors of each of the buildings. The domestic supply of water for each of the buildings also enters the building through the same private service main, and all the water entering the stand-pipe goes through a meter and is measured. However, no charge is made for any water actually used for fire protection, save the annual charge for stand-pipe service. The rules of the defendant, the enforcement of which plaintiffs seek to enjoin, are, in part, as follows:

"Section 68. Rates for Automatic Sprinkler Systems and Stand-pipes. Service pipe connections with service mains for the supply of stand-pipes or automatic sprinkler systems shall be charged for at the following annual rates, payable in equal monthly instalments, viz.:

"For Supply of Standpipes

| | |
|---|---|
| 2½-inch connection | $24.00 |
| 3 -inch connection | 36.00 |
| 4 -inch connection | 60.00 |
| 6 -inch connection | 90.00 |

"For Supply of Automatic Sprinkler Systems

| | |
|---|---|
| 4-inch connection | $24.00 |
| 6-inch connection | 36.00" |

"Section 70. Relating to Collection of Charges for Fire Hydrants and Fire Service Lines. All charges for fire hydrants and fire service lines shall be collected as herein provided, whether metered or not; Provided, however, that all water used for the extinguishment of fires shall be estimated by the water office and deducted from respective bills for water used."

All of the buildings in controversy are located in the congested business district of the city of Omaha. Each of the plaintiffs has refused to pay the charge fixed by the rules of the defendant, and the latter has threatened to shut off the water supply unless the charges are paid.

The defendant is a municipal corporation created by statute to take over, control and operate the water-plant,

formerly owned by the city of Omaha, and certain other public utilities. Its territorial limits include the city of Omaha and some adjacent territory. The cost of the water-plant controlled and operated by defendant is slightly in excess of $10,000,000, and its present reproduction value, less depreciation, is approximately $16,000,000. Generally speaking, the water-plant consists of pumping stations, water-mains, settling basins, filtering plants, and other machinery and equipment for increasing the water pressure. The entire water-plant has a capacity to furnish daily 51 million gallons of water. The maximum required for domestic purposes is 34 million gallons daily and 17 million gallons a day is the maximum required for public and private fire protection. The evidence fairly discloses that a capacity of 11 million gallons daily is the maximum requirement for public fire protection, and that 6 million gallons daily capacity is required to meet the possible demand for the private fire protection afforded by private fire hydrants, stand-pipes, sprinkler service and for leakage.

As stated by plaintiffs, the issue for determination is whether the regulations and the charges are so unreasonable and discriminatory as to be unconstitutional and void.

The evidence shows that the stand-pipe and automatic sprinkler systems installed in the larger buildings afford an added measure of fire protection to the owners and occupants of such buildings that is not enjoyed by the public at large and is not enjoyed by the property owners in whose buildings such systems are not installed; that the installation of such private systems of fire protection lessens the cost of fire insurance on such buildings and their contents to an amount equal to or in excess of the charge of defendant for stand-pipe service, and that such added fire protection makes offices in the buildings more desired by tenants and enhances the rental value of such buildings. The evidence further shows that, in the event of a fire or other casualty which destroys one of these buildings, in which a stand-pipe or sprinkler system has been in-

stalled, there is a probability of the breaking of the stand-pipe and a large waste of water before access can be gained to the shut-off valve adjacent to the building; that, because of this liability to breakage, the defendant is required to maintain larger mains and larger pumping capacity and appliances, so as to be able to furnish the necessary water for domestic use and public fire protection, in addition to that which may be lost by such leakage. It necessarily follows that the installation of either the sprinkler or stand-pipe system for private fire protection materially adds to the burden of defendant in maintaining its water-system. In order to be prepared to supply this extraordinary amount of water, it must have larger pumps, settling basins, and mains. As above indicated, the evidence tends to show that, because of the maintenance of these private fire hydrants, sprinkler and stand-pipe systems in the city of Omaha, defendant is required to have an added daily capacity for furnishing water to the amount of 6 million gallons. The evidence fairly shows that one-third of the capacity of defendant's water-plant is required for public and private fire protection.

Defendant has no other substantial source of income than the charges for domestic water-service, the water tax for hydrant rentals, and the rates and charges for private fire protection. Defendant has a bonded indebtedness of approximately $7,000,000, bearing 4½ per cent. interest. It must receive a sufficient revenue to cover the cost of the operation of the plant and necessary extensions and replacements, allowance for depreciation, together with a sufficient amount to pay the interest upon its bonded indebtedness and to raise a sinking fund to pay the bonds as they mature. The total income of defendant from the maximum public water tax, which represents the amount paid by the public for fire hydrants, is approximately $189,000, from private fire hydrants approximately $12,000, and from sprinkler systems and stand-pipe service approximately $17,000, or a total annual income for fire protection of approximately $218,000. The annual expense

of operation of the plant is in excess of $500,000. The annual interest charge on bonds is approximately $315,000. These two items alone aggregate $815,000. If one-third of these two items is allocated for fire protection, it will be seen that the total income for fire protection' is not sufficient to pay the allocated portion of these two items alone. This amounts to a demonstration that the charges generally received for fire protection are not exorbitant, but are, in fact, unreasonably low.

Plaintiffs, however, contend that there is a discrimination because the annual charge for a 4-inch connection for a stand-pipe is $60, and the annual charge for a public fire hydrant is $60. In this connection it may be observed that the statute fixes the maximum charge for public fire hydrants at $60 per annum; therefore, no greater sum can be obtained from that source. Moreover, it appears from the evidence that the revenue received by defendant for public fire protection, viz., $189,000 per annum, for being able to furnish a maximum of 11 million gallons of water daily, is a much greater rate than that paid for private fire protection, since the toal amount received for private fire protection aggregates but $29,000 per annum for being able to furnish a maximum of 6 million gallons of water daily.

Plaintiffs further contend that there is a discrimination because a less charge is made for an automatic sprinkler service than for a stand-pipe service, where the connection is of the same size, but the evidence also shows that the automatic sprinkler service is more efficient in preventing a fire in the building where installed, and therefore makes less liable the burning and collapse of the building, with the consequent breaking of the water-pipes and loss of water occasioned thereby. The liability of defendant to loss of water through the breaking of pipes where a sprinkler system is installed is therefore less than where a stand-pipe system is installed, and appears to justify a lesser charge.

After a careful reading and examination of the entire bill of exceptions, we are convinced that the evidence justifies each of the findings made by the trial court, to the effect that defendant renders to the plaintiffs a valuable service other and different from that furnished to the public at large, and that the charge made for such service is reasonable and is not discriminatory.

The judgment in each of the cases is

AFFIRMED.

Note—See Waters, 40 Cyc. 802, 803 (1926 Ann.).