NELSON-JOHNSTON & DOUDNA, APPELLANT, V. METROPOLITAN UTILITIES DISTRICT, APPELLEE.

291 N. W. 558

FILED APRIL 12, 1940. No. 30703.

*Leon, White & Lipp,* for appellant.

*Dana Van Dusen, contra.*

*A. G. Humphrey, J. R. Mueller, Beeler, Crosby & Baskins, Paul C. Holmberg, J. C. Reavis, Thomas Stibal, A. J. Denney, John E. Mekota, Clyde Barton, Harry K. Livingston, C. R. Stasenka, P. M. Everson, John Ferneau, C. A. Sorensen* and *C. N. McElfresh, amici curiæ.*

Heard before SIMMONS, C. J., ROSE, PAINE, CARTER, MESSMORE and JOHNSEN, JJ., and ELLIS, District Judge.

CARTER, J.

This is an appeal from a decree of the district court for Douglas county sustaining defendant's general demurrer to plaintiff's petition filed to secure an injunction against alleged unlawful trading on the part of the Metropolitan Utilities District of the city of Omaha. The plaintiff refused to plead further and plaintiff's petition was thereupon dismissed. Plaintiff appeals.

The plaintiff is a corporation with its principal place of business within the territory served by the Metropolitan Utilities District, a taxpayer of the city of Omaha and a patron and user of the gas and water facilities of the district. The defendant is a municipal corporation created and existing under the laws of the state of Nebraska (Comp. St. 1929, secs. 14-1001 to 14-1030 and 14-1101 to 14-1105) and empowered by such laws to engage in the business of supplying the inhabitants of the city of Omaha and surrounding territory with water and gas, and to manufacture and produce coke and by-products in connection with the

operation of its gas plant, and to sell and deliver the same to its customers.

The record shows that plaintiff is now and for many years has been engaged in the sale at retail of gas ranges, gas stoves, gas heaters, mechanical refrigerators and other household appliances in the city of Omaha. Plaintiff further alleges that the defendant district is now operating a retail appliance store in the city of Omaha and is selling and offering for sale gas stoves, gas ranges, gas heaters, mechanical refrigerators and other household appliances, that defendant carries on an extensive advertising campaign, including the giving to its customers free merchandise and articles used in connection with the cooking and preparation of foods, and that it extends to its patrons unusual and long terms of credit on merchandise sold which private competitors cannot meet. It is further alleged that there are numerous private mercantile establishments engaged in the gas-appliance business in the city of Omaha, that there is no scarcity of such appliances and that there is no price fixing by dealers, combinations or trusts to stifle competition or thwart the beneficent results of free enterprise.

Plaintiff contends that defendant is unlawfully engaging in the gas-appliance business contrary to the statutory law of this state and to the damage of the plaintiff, and that it is entitled to an injunction restraining the unlawful acts of this defendant in carrying on such gas-appliance business.

The defendant is a municipal corporation created by statute to take over, control and operate the artificial gas system of the city of Omaha, and other public utilities. *Keystone Investment Co. v. Metropolitan Utilities District*, 113 Neb. 132, 202 N. W. 416. A noted text-writer defines a municipal corporation as follows: "We may, therefore, define a municipal corporation in its historical and strict sense to be the incorporation, by the authority of the government, of the inhabitants of a particular place or district, and authorizing them in their corporate capacity to exercise subordinate specified powers of legislation and regula-

tion with respect to their local and internal concerns. This power of local government is the distinctive purpose and the distinguishing feature of a municipal corporation proper. The phrase 'municipal corporation' is used with us in general in the strict and proper sense just mentioned; but sometimes it is used in a broader sense that includes also public or quasi corporations, the principal purpose of whose creation is as an instrumentality of the state, and not for the regulation of the local and special affairs of a compact community." 1 Dillon, Municipal Corporations, 59. While the Metropolitan Utilities District does not have all the attributes of a municipal corporation strictly defined, yet it performs the functions of a municipal corporation and in its broader sense is a municipal corporation.

The rule has long been established in this state that a municipal corporation "possesses, and can exercise, the following powers, and no others; First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable." *Christensen v. City of Fremont*, 45 Neb. 160, 63 N. W. 364. See, also, *Consumers Coal Co. v. City of Lincoln*, 109 Neb. 51, 189 N. W. 643; *Schroeder v. Zehrung*, 108 Neb. 573, 188 N. W. 237.

The right to own and operate a water plant was first granted to the city of Omaha by special enactment of the legislature. Subsequently, the control and management was lodged with the defendant district. The right to own and operate a gas-manufacturing plant and distribution system was likewise added to the powers and duties of the district. The effect of these statutes is to create a governmental agency which has for its purposes the control and operation of the proprietary functions which ordinarily would have been performed by the city of Omaha. It seems to us, therefore, that the powers of the district must be tested on the same basis as if being performed by the city itself. It is conceded that there is no power granted by express provi-

sion of any statute permitting the district to engage in the sale of gas appliances. The question resolves itself into one as to whether the right to engage in the sale of gas appliances can fairly be implied from the powers granted. In other words, does the fact that the district is authorized to manufacture, sell and distribute gas to the inhabitants of the district imply the power to sell gas appliances?

The powers granted to a municipal corporation can be divided into two general classes,—the one including those which are legislative, public or governmental, and import sovereignty; the second, those which are proprietary or quasi private, conferred for the private advantage of the inhabitants and the city itself as a legal entity. Where the legislature creates a separate municipal corporation to perform the functions of a city usually regarded as proprietary, such municipal agency is just as much engaged in proprietary functions as if the city was doing it itself. We must, therefore, construe the granted powers as proprietary in character as distinguished from a governmental grant of authority. We think that a grant of power to a municipal corporation in its proprietary capacity stands upon the same footing as a similar grant to a private corporation by its charter. The grant of power to control and operate a public utility necessarily implies all the incidental powers to do anything that any business man or corporation ought to do in operating a successful business enterprise. Certainly, a private corporation engaged in the manufacture and distribution of gas may sell gas appliances to the purchasing public. The sale of such appliances by private utility companies tends to increase the volume of gas sales and thereby increases the economic efficiency of the corporation. Such results are likewise necessary to the proper operation of a municipally owned business. Applying the same rule to the proprietary powers of a municipal corporation as to the powers enjoyed by a private corporation, we conclude that the defendant district has the implied power to engage in the gas-appliance business. Whether such municipal corporation in its proprietary capacity may engage in the sale

of such appliances at a loss, or where it will create an indebtedness against the district, or permanently impair the income of the district derived from the sale of gas, we do not find it necessary to answer in this case. We merely hold that under the facts presented to us the defendant district has the implied power to engage in the gas-appliance business.

It has been held that a municipality authorized to own and operate an electric-light plant has the implied power to sell electrical appliances. *Andrews v. City of South Haven,* 187 Mich. 294, 153 N. W. 827. It has also been held that a municipality engaged in operating a power and light plant may sell its excess steam and install the appliances necessary to enable it to meet the demand. *Milligan v. City of Miles City,* 51 Mont. 374, 153 Pac. 276. A municipality, in installing electric wiring in private houses for purposes of furnishing electricity for electric ranges, stoves, etc., is governed by the same laws and could exercise the same rights as a private corporation engaged in the same business. *Hamler v. City of Jacksonville,* 97 Fla. 807, 122 So. 220.

In *Henry v. City of Lincoln,* 93 Neb. 331, 140 N. W. 664, this court said: "In the light of the above authorities, we conclude that in the installation and management of its waterworks system defendant must be treated as a private corporation engaged in a purely business enterprise, as separate and distinct from the performance of its governmental functions and corporate duties as if it were not a municipal corporation at all, and that its liability to plaintiff must be determined solely under the law and procedure applicable to a private corporation and its employee." The rule was subsequently followed in *City of University Place v. Lincoln Gas & Electric Light Co.,* 109 Neb. 370, 191 N. W. 432, and *Cook v. City of Beatrice,* 114 Neb. 305, 207 N. W. 518. We think this is a clear indication of the rule to be applied in the instant case.

When a municipal corporation engages in a business enterprise which is reasonably necessary to the performance of its public duty, or which materially advances it, or even

where the enterprise merely affords the public greater convenience in the use of the municipality's facilities, the participation in such an enterprise is, by the weight of authority, held to be a power implied from or incidental to its expressly granted powers. Certainly no private company could await the initiative of its prospective customers, nor the efforts of others, to sell appliances before doing business. It would have to rely upon its own efforts in this respect. A municipality engaged in the gas business must meet the same problems. Until the district is equipped with gas appliances, there could be no gas business.

We think the correct rule is: If a municipal corporation legally acquires a public utility plant, with the right to operate it for the benefit of its inhabitants, it would likewise acquire by implication the right to do all the things that a private owner might do in order to economically and efficiently furnish to the citizen the product in which he deals. The sale of gas-appliances by the defendant district is intimately connected with and incidental to the sale of gas, and is, therefore, an implied power of such district because it directly and proximately tends to accomplish the general purpose for which the district was established and operated. This, in our judgment, states the more modern rule adopted by a majority of the states which have passed on the question.

We have examined the cases arriving at a contrary conclusion, including *MacRae v. Selectmen of Town of Concord,* 6 N. E. (2d) (Mass.) 366; *Keen v. Mayor of Waycross,* 101 Ga. 588, 29 S. E. 42; *Attorney General v. Corporation of Leicester* (1910) 2 Ch. Div. (Eng.) 359; *In re Opinion of the Justices,* 14 N. E. (2d) (Mass.) 392, and *Adie v. Mayor of Holyoke,* 21 N. E. (2d) (Mass.) 377. These cases invoke the strict construction usually applied to grants of governmental powers to a municipality. We are unwilling to follow so strict a construction in dealing with statutes granting powers to a municipality in its proprietary capacity.

We conclude therefore that the trial court properly sustained the demurrer to plaintiff's petition.

AFFIRMED.