MERVIN D. EVANS, APPELLEE, v. METROPOLITAN UTILITIES DISTRICT OF OMAHA, NEBRASKA, ET AL., APPELLEES, IMPLEADED WITH CITY OF OMAHA ET AL., APPELLANTS.

188 N. W. 2d 851

Filed July 23, 1971. No. 37767.

Herbert M. Fitle, Schmid, Ford, Snow & Mooney, Manfred Pieck, and John E. Rice, for appellants.

Cecil S. Brubaker, W. L. Strong, and Merlin E. Remmenga, for appellee Metropolitan Utilities Dist.

Foulks, Wall & Wintroub, for appellee Evans.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

SPENCER, J.

This appeal is from the sustaining of the motion of Metropolitan Utilities District of Omaha, hereinafter referred to as MUD, for summary judgment determining LB 425 (Laws 1967, c. 47, p. 178), to be invalid and unconstitutional. The original action was brought by plaintiff Evans as a ratepayer of MUD for a declaratory judgment of the constitutionality of LB 425, which bill amended section 14-1041, R. R. S. 1943, and created section 14-1042, R. R. S. 1943. For the purposes of this opinion LB 425 will be used to refer to the above sections. LB 425 requires MUD to pay 2 percent of its gross retail sales to the municipalities which it serves.

The City of Omaha, hereinafter referred to as City, demurred to the petition of plaintiff Evans, which demurrer was sustained in the trial court and affirmed on appeal to this court. See Evans v. Metropolitan Utilities Dist., 184 Neb. 172, 166 N. W. 2d 411. The case then proceeded on the cross-petition of MUD, which asked for a declaration of the unconstitutionality of LB 425 and for an injunction as to future payments thereunder. The defendant City filed an answer to the cross-petition of MUD, asserting the constitutionality of LB 425 and setting forth affirmative defenses of ownership, waiver, estoppel, and laches. The district court found LB 425 to be unconstitutional as violative of Article I, section 3, and Article VIII, sections 1 and 7, of the Constitution of Nebraska, as well as of the Fifth Amendment to the

Constitution of the United States. We determine LB 425 to be constitutional, and reverse.

In 1911 City purchased the Omaha Water Company. In 1913 the Legislature created the Metropolitan Water District of the City of Omaha, and gave it the sole management and control of all waterworks systems in Omaha and adjacent areas. See § 14-1001, R. R. S. 1943. Between 1918 and 1920, City acquired a gas plant by condemnation. In 1921 the Legislature extended the powers of the Metropolitan Water District to include the gas plant acquired by City, and changed the name of the Metropolitan Water District to Metropolitan Utilities District. See § 14-1103, R. R. S. 1943. Since that time, although City has never been reimbursed for expenditures made to purchase and improve the waterworks systems or the gas plant, they have been controlled, managed, and operated by Metropolitan Utilities District.

In construing an act of the Legislature, all reasonable doubt must be resolved in favor of constitutionality. Nelsen v. Tilley, 137 Neb. 327, 289 N. W. 388, 126 A. L. R. 729. If a statute is subject to more than one construction, one of which would make that act constitutional and the other unconstitutional, this court is required to adopt the former. Peterson v. Hancock, 155 Neb. 801, 54 N. W. 2d 85. In construing a statute, the court must look to the objective to be accomplished, the evils and mischiefs sought to be remedied, or the purpose to be served, and place on it a reasonable construction which will best effect its purpose, rather than one which will defeat it. City of Grand Island v. Ehlers, 180 Neb. 331, 142 N. W. 2d 770. The burden of establishing the unconstitutionality of a statute is on the one attacking its validity, because statutes are presumed to be constitutional; unconstitutionality must be clearly established; and courts will not pass upon a question of constitutionality unless it becomes necessary to do so. If the words of a statute are

of doubtful meaning they will be interpreted in a manner which will best effect the purposes of the enactment in preference to one which will defeat it. Metropolitan Utilities Dist. v. City of Omaha, 171 Neb. 609, 107 N. W. 2d 397.

MUD was created by the Legislature and given the control and management of the water and gas plants owned by City. As we have said on many occasions, the Legislature has plenary power over MUD. "Plenary" is defined in Black's Law Dictionary (4th Ed.), p. 1313, as: "Full, entire, complete, absolute, perfect, unqualified." The Legislature which created MUD could likewise destroy it by transferring its operation to some other public body.

The district court felt that LB 425 was violative of the following portion of Article VIII, section 1, Constitution of Nebraska: "The necessary revenue of the state and its governmental subdivisions shall be raised by taxation in such manner as the Legislature may direct." We assume the rationale of the court to be that inasmuch as the Constitution says the necessary revenue for governmental subdivisions shall be raised by taxation, either that the payments required to be made by MUD must be considered to be tax payments, or if not tax payments, they could not be required. There is no merit to either of these contentions. As suggested hereafter, we determine the payments are not tax payments. It is quite apparent under the Nebraska Constitution that the state, as well as any of its political subdivisions, does not raise all of its revenue by means of taxation. What the Constitution says is the "necessary revenue," which would be revenue other than that acquired from other sources. There are many other sources of revenue, such as licenses; permits; fees and franchises; money from loans and bond issues; state and federal grants in aid; income from the use, lease, and sale of property; as well as others.

In 1947 the Legislature enacted LB 58 (Laws 1947, c.

21, p. 111), which became a part of section 14-1041, R. R. S. 1943, and which provided .for the. payment by MUD to City of a sum equal to 1 percent of the book value after deduction of the depreciation of the plant and distribution system in service within the corporate limits of City, such payments to be in lieu of any license, occupation, or excise tax upon MUD.

LB 425 amended section 14-1041, R. R. S. 1943, to provide that MUD shall pay City a sum equivalent to 2 percent of the annual gross revenue derived from all retail sales of water and gas sold within City, but retained the prohibition on City from levying or collecting any license, occupation, or excise tax upon or from MUD. This same provision was extended to all other municipalities in which MUD operates.

The title of LB 425 was as follows: "An Act to amend section 14-1041, Reissue Revised Statutes of Nebraska, 1943, relating to cities of the metropolitan class; to change the amount metropolitan water and utilities districts shall pay to the metropolitan cities in lieu of license, occupation or excise tax; to provide for such payments to other municipalities as prescribed; and to repeal the original section."

MUD never questioned LB 58 and made all payments required thereunder until the amendment of section 14-1041, R. R. S. 1943, by LB 425. It is evident that the Legislature in requiring the payment to City and the other municipalities involved did not consider the payments as a tax but rather as a payment in the nature of a license, an occupation fee, or an excise tax. In this connection, it is important to note that in State v. Cheyenne County, 127 Neb. 619, 256 N. W. 67, we held constitutional provisions. relating to property taxes do not apply to excise taxes and a gasoline tax being an excise tax was not in contravention of the inhibition of Article VIII, section 7, Constitution of Nebraska.

The legislative committee statement on LB 425 states that its purpose is to. increase the amount MUD now

pays to the City of Omaha; that the original bill provided for a 4½ percent payment of the annual gross revenue derived from all retail sales of gas sold within City; and that by virtue of a compromise effected between MUD and the Omaha city officials, the bill was revised to add gross revenue derived from retail sales of water, and to reduce the percentage to 2 percent of the annual gross revenue.

Article I, section 3, Constitution of Nebraska, is as follows: "No person shall be deprived of life, liberty, or property, without due process of law." This is the same point which is involved in the reference to the Fifth Amendment to the Constitution of the United States. A sufficient answer to the due process objection is embraced in the following from Rein v. Johnson, 149 Neb. 67, 30 N. W. 2d 548: "As related to legislation, it is generally held that due process is satisfied if the Legislature had the power to act on the subject matter, if that power was not exercised in an arbitrary, capricious, or unreasonably discriminatory manner, and if the act, being definite, had a reasonable relationship to a proper legislative purpose. In other words, if an act of the Legislature is authorized and promulgated by the inherent and reserved constitutional powers of the state, and is enforced with due regard to and observance of the rules established by our system of jurisprudence for the security of life, liberty, and property, it is not in conflict with due process of law. 16 C. J. S., Constitutional Law, § 569, p. 1156."

We are dealing with a public service corporation created by the Legislature over which the Legislature has plenary power. "The rights and franchises of a public corporation never become vested rights as against the state, and its charter constitutes no contract in the sense of the constitutional provision which prohibits the obligation of contracts being violated." United Community Services v. The Omaha Nat. Bank, 162 Neb. 786, 77 N. W. 2d 576.

If we accept the premise of MUD that LB 425 is a tax, it is still necessary for MUD to point out the express language prohibiting the Legislature from providing it. In order for the state Constitution to restrict the plenary power of the Legislature to tax MUD, the language of the restriction must be clearly applicable. R-R Realty Co. v. Metropolitan Utilities Dist., 184 Neb. 237, 166 N. W. 2d 746.

In Consumers Public Power Dist. v. City of Lincoln, 168 Neb. 183, 95 N. W. 2d 357, we said: "* * * the rule is clear in this state that a public corporation is not subject to taxation * * * *unless the power to tax is expressly conferred by the Legislature which has plenary power over it.*" (Italics supplied.) Here, even if we were to accept MUD's contention that we are dealing with a tax, it would be a tax levied by the Legislature on a public as distinguished from a municipal corporation. MUD, being the creation of the Legislature, may be taxed or even destroyed by the Legislature.

In United Community Services v. The Omaha Nat. Bank, 162 Neb. 786, 77 N. W. 2d 576, we said: "A public corporation, authorized by the Legislature and organized pursuant thereto to carry out functions that have been determined to be for a public purpose and the general welfare of the people, is an arm or branch of the government for this purpose and under the plenary control of the Legislature * * *." In that case, we determined that the Legislature, having plenary power over public corporations, could authorize contributions for public purposes. We said: "While the revenues received by the district in the operations of its business are not public funds in the same sense as those derived from taxation, however, they are public funds collected by the district for certain purposes and the Legislature may, under its control of the district, authorize their expenditure for a public purpose beneficial to such district and those immediately interested therein but

under the restrictions and limitations imposed on the Legislature by the Constitution."

It is important to remember that the state Constitution is not a grant but rather is a restriction of legislative power. The taxing power vested in the Legislature is without limit, except as it may be prescribed by the Constitution itself. State v. Cheyenne County, 127 Neb. 619, 256 N. W. 67. Consequently, courts can enforce only those limitations which the Constitution itself clearly imposes. Elmen v. State Board of Equalization & Assessment, 120 Neb. 141, 231 N. W. 772. In the proper construction of constitutional provisions, limitations or restrictions upon the power of taxation can never be raised by implication, but the intention to impose them must be expressed in clear, unambiguous language. State v. Cheyenne County, *supra*.

The following from United Community Services v. The Omaha Nat. Bank, *supra,* is of interest herein: "As stated in Oxnard Beet Sugar Co. v. State, supra: 'It is the province of the legislature to determine matters of policy. In appropriating the public funds, if there is a reason for doubt or argument as to whether the purpose for which the appropriation is made is a public or a private purpose, and reasonable men might differ in regard to it, it is generally held that the matter is for the legislature; * * *.' "

The Metropolitan Utilities District often has been referred to as a municipal corporation. More accurately it is merely a public agency or public service corporation created to perform purely proprietary functions in the operation of specific public utilities. The distinction is fully delineated in State v. Cheyenne County, 127 Neb. 619, 256 N. W. 67, as follows: "In Bliss v. Pathfinder Irrigation District, 122 Neb. 203, this court, in discussing the essential difference between a public corporation and a municipal corporation, made the following observations: 'Corporations are generally classed as public and private. While a municipality is a public corporation, it does not

follow that every public corporation is a municipality. In 1 Dillon, Municipal Corporations (5th ed.) 58, sec. 31, the term "municipal corporation" is defined as follows: "A municipal corporation, in its strict and proper sense, is the body politic and corporate constituted by the incorporation of the inhabitants of a city or town for the purposes of local government thereof. Municipal corporations as they exist in this country are bodies politic and corporate of the general character above described, established by law partly as an agency of the state to assist in the civil government of the country, but chiefly to regulate and administer the local or internal affairs of the city, town, or district which is incorporated." A like definition is found in 43 C. J. 65.'

"The definition in 43 C. J. 65, thus referred to with approval, is as follows: 'A municipal corporation is a legal institution formed by charter from sovereign power, erecting a populous community of prescribed area into a body politic and corporate with corporate name and continuous succession and for the purpose and with the authority of subordinate self-government and improvement and local administration of affairs of state. The foregoing definition presents the logical and practical view of a municipal corporation. It is a brief formula embracing the essential elements and excluding other kindred bodies called quasi corporations. It expressly includes: The body of individuals; the sanction of the sovereign; the definite public purpose; the necessary powers; the charter; and the primary incidents of name and succession. *These are the elements generally recognized as essential to a municipal corporation.* It impliedly excludes parishes, counties, townships, and districts, which are almost municipalities and yet are deficient in some of the essential attributes of a municipal corporation; while it expresses the complex nature of the corporation, whereby it acts as a municipium, and also as a local agency for administering and enforcing the laws of the state.'

"This approved and accepted definition excludes counties from the scope of the term 'municipal corporations,' as employed in section 7, art. VIII of the Constitution, which conclusion is reinforced by the conceded fact that, in Nebraska, 'a county does not possess the double governmental and private character that cities do' (State v. Board of County Commissioners, supra), which is one of the essential attributes of a municipal corporation. It therefore follows that, viewing the constitutional provision under consideration as a limitation of or exemption to the sovereign power of taxation, and giving the term 'municipal corporations' employed therein a fair, reasonable interpretation in the light of the principle that such restriction or limitation can never be raised by implication but the intention to impose them must be expressed in clear, unambiguous language, counties are not embraced therein, are not municipal corporations, and are not entitled to the benefits of the restriction and limitation provided by section 7, art. VIII of the Constitution. See City of Ardmore v. State, 32 Pac. (2d) (Okla.) 728." (Emphasis supplied.)

As the above quotation indicates, a municipal corporation historically and in the strict sense is a political subdivision, organized to exercise governmental powers specifically conferred upon it by the state. MUD exercises no strictly governmental functions. Metropolitan Water District was established in 1913. In March of that year this court filed Henry v. City of Lincoln, 93 Neb. 331, 140 N. W. 664, 50 L. R. A. N. S. 174, involving an action for injuries received in the operation of the Lincoln water works. That case held: "It is no part of the duty of a municipal corporation to engage in a purely business or commercial enterprise. When it seeks and obtains from the legislature permission to engage in such an enterprise, its act in so doing is entirely voluntary on its part, and, while engaging in such business, it is acting in a purely private business capacity, outside of its functions and duties as a municipal

corporation, and is bound by all of the rules of law and procedure applicable to any other corporation or person engaged in a like enterprise." See, also, Cook v. City of Beatrice, 114 Neb. 305, 207 N. W. 518, which, citing the above quotation from Henry v. City of Lincoln, *supra*, held that Beatrice, in maintaining an electric plant and selling current, was outside its governmental functions.

We have heretofore determined that MUD exercises no governmental functions. Metropolitan Utilities Dist. v. City of Omaha, 112 Neb. 93, 198 N. W. 858. We there held: "The construction, operation or maintenance of water and gas plants by municipal corporations is not an exercise of governmental functions, but is rather in the nature of a private enterprise for the convenience, advantage or benefit of the municipality, its inhabitants and property owners."

In Nelson-Johnston & Doudna v. Metropolitan Utilities Dist., 137 Neb. 871, 291 N. W. 558, we said that where the Legislature creates a separate municipal corporation to perform the functions of a city usually regarded as proprietary, such municipal agency is just as much engaged in a proprietary function as if the city were doing it itself.

We interpret the term "municipal corporations," as used in Article VIII, section 7, Constitution of Nebraska, to refer to municipal corporations in the strict and legal sense or those which exercise governmental functions as distinguished from proprietary functions. MUD is a public service corporation exercising only proprietary functions and is not included within the meaning of municipal corporations as that term is used in the Constitution.

MUD has not sustained the burden of proving LB 425 to be unconstitutional. The judgment of the district court sustaining the motion for summary judgment is reversed and the cause is remanded with directions to

dismiss the cross-petiton of MUD.

REVERSED AND REMANDED WITH DIRECTIONS.

BOSLAUGH, J., dissenting.

I do not agree that the charge imposed by section 14-1041, R. R. S. 1943, upon the gross revenue of the Metropolitan Utilities District of Omaha is not a tax. It is clearly a revenue measure. To classify it as something other than a tax is to ignore reality and exalt form over substance.

In a number of cases this court has recognized that the Metropolitan Utilities District of Omaha is a municipal corporation in the broader sense of the term. See, Nelson-Johnston & Doudna v. Metropolitan Utilities Dist., 137 Neb. 871, 291 N. W. 558; Keystone Investment Co. v. Metropolitan Utilities Dist., 113 Neb. 132, 202 N. W. 416, 37 A. L. R. 1507; Metropolitan Utilities Dist. v. City of Omaha, 171 Neb. 609, 107 N. W. 2d 397. The Metropolitan Utilities District performs the functions, both governmental and proprietary, that otherwise would be performed by the City of Omaha in regard to a water and gas system. The district has all the powers granted to cities and villages by the general statutes for the construction or extension of waterworks and other utilities. The district fixes all rates including those for services furnished by a private utility, and its rules and regulations have the force and effect of a city ordinance.

The Constitution provides that: "* * * The Legislature shall not impose taxes on municipal corporations, or the inhabitants or property thereof, for corporate purposes." Art. VIII, § 7, Constitution of Nebraska. Such a provision is generally construed to mean that the Legislature has no power to impose a tax for the ordinary purposes for which taxes are levied by municipalities. 16 McQuillin, Municipal Corporations (3d Ed.), § 44.18, p. 58: Metropolitan Utilities Dist. v. City of Omaha, 112 Neb. 93, 198 N. W. 858; 62 C. J. S., Municipal Corporations, § 194, p. 352.

By section 14-1041, R. R. S. 1943, the Legislature has imposed a tax on one municipal corporation for the benefit of another with no restriction upon the use of the revenue. The statute compels a diversion of utility revenue for non-utility purposes. Its effect is to impose a levy for city purposes upon the ratepayers of the district without regard to their place of residence.

WHITE, C. J., joins in this dissent.